1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   P. CRAIG CARDON, Cal. Bar No. 168646
3  NATHANIEL P. BRUNO, Cal. Bar No. 228118
   Four Embarcadero Center, 17th Floor
4  San Francisco, California  94111-4109
   Telephone:    415-434-9100
5  Facsimile:    415-434-3947
   E-Mail:       ccardon@sheppardmullin.com
6                  nbruno@sheppardmullin.com

7  Attorneys for Defendant
   PETER LANG PUBLISHING, INC.
8

9
                       UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11
                            SAN FRANCISCO DIVISION
12

13
   ROBERT and SUZANNE HARVEY, husband        Civil Action No. 3:09-cv-01391-JSW
14 and wife; THE ROBERT J. AND SUZANNE
   R. HARVEY FAMILY TRUST OF 1997, a
15 California trust;                         **DEFENDANT'S NOTICE OF MOTION
                                             AND MOTION TO SET ASIDE ENTRY
16              Plaintiffs,                  OF DEFAULT, AND MEMORANDUM OF
                                             POINTS AND AUTHORITIES IN
17       v.                                  SUPPORT THEREOF**

18 PETER LANG PUBLISHING INC., a New         **[Fed. R. Civ. P. 55(c)]**
   York corporation; and DOES 1 through 100,
19 inclusive,
                                             Hearing Date:  August 14, 2009
20              Defendants.                  Hearing Time:  9:00 a.m.

21                                           Courtroom:  11, 19th Floor
                                             Honorable Jeffrey S. White
22

23

24

25

26

27

28

---
W02-WEST:6NB1\401576921.1                              DEFENDANT'S MOTION TO SET ASIDE DEFAULT
Civil Action No. 3:09-cv-01391-JSW

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................. 1

CONCISE STATEMENT OF RELIEF SOUGHT ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I. STATEMENT OF ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT ............................................................................................................ 1

II. SUCCINCT STATEMENT OF THE RELEVANT FACTS ................................... 2

    A. Plaintiffs' Complaint. ................................................................................ 2

    B. Discussion Between Christopher S. Myers of Peter Lang and Plaintiffs' Counsel Regarding the Claims Made in the Complaint. ......................... 2

    C. Mr. Myers of Peter Lang Follows Up With Mr. Floum. ........................... 4

    D. Mr. Floum Provides Abrupt Notice of Default After Failing to Respond to Mr. Myers's Inquiries. .............................................................................. 5

    E. Peter Lang Refers the Matter to Counsel. ................................................. 5

    F. Peter Lang's Counsel, Mr. Plummer, Contacts Plaintiffs' Counsel, Mr. Floum. ........................................................................................................ 6

    G. Mr. Floum and Plaintiffs Stand Silent Despite Peter Lang's Attempts to Discuss and Negotiate This Matter Toward a Potential Resolution. ......... 7

III. ARGUMENT ............................................................................................................ 7

    A. Legal Standards Governing this Motion to Set Aside Entry of Default. ... 7

    B. Peter Lang's Forbearance In Responding to Plaintiffs' Pleading Was the Result of Excusable Neglect Amounting to Good Cause to Set Aside the Entry of Default. ....................................................................................... 8

        1. Peter Lang's conduct in not responding to Plaintiffs' pleading was not culpable. ............................................................................. 10

        2. Peter Lang has a meritorious defense to this action. .................... 12

        3. Plaintiffs will not suffer prejudice if the entry of default is set aside. ........ 12

-ii-

      C.      The Law Favors Decisions On the Merits. ............................................................... 14

IV.      CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Federal Cases**

Brady v. U.S.,
    211 F.3d 499 (9th Cir. 2000) ................................................................................................ 8

Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.,
    840 F.2d 685 (9th Cir. 1988) ................................................................................................ 8

Employee Painters' Trust v. Ethan Enterprises, Inc.,
    480 F.3d 993 (9th Cir. 2007) .............................................................................................. 10

Fabschutz v. Saxby's Coffee, Inc.,
    2008 U.S. Dist. LEXIS 27114 (D. Colo. 2008) ...................................................... 11, 12, 13

Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.,
    375 F.3d 922 (9th Cir. 2004) ................................................................................................ 8

In re Hammer,
    940 F.2d 524 (9th Cir. 1991) .............................................................................................. 14

Klapport v. U.S.,
    335 U.S. 601 (1949) ........................................................................................................... 14

Lacy v. Sitel Corp.,
    227 F.3d 290 (5th Cir. 2000) .............................................................................................. 12

Owens-Illinois, Inc. v. T & N Ltd.,
    191 F.R.D. 522 (E.D. Tex. 2000) .................................................................................... 9, 10

Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership,
    507 U.S. 380 (1993) ............................................................................................................. 8

Rasmussen v. W.E. Hutton & Co.,
    68 F.R.D. 231 (N.D. Ga. 1975) .......................................................................................... 14

Sims v. EGA Products, Inc.,
    475 F.3d 865 (7th Cir. 2007) ................................................................................................ 8

Schwab v. Bullock's Inc.,
    508 F.2d 353 (9th Cir. 1974) ......................................................................................... 2, 14

Standard Enterprises, Inc. v. Bag-It, Inc.,
    115 F.R.D. 38 (S.D.N.Y. 1987) ....................................................................................... 9, 10

TCI Group Life Ins. Plan v. Knoebber,
    244 F.3d 691 (9th Cir. 2001) ............................................................ 2, 8, 9, 10, 11, 12,
    ............................................................................................................................................. 13

Villa v. Mediware Information Systems, Inc.,
    2006 U.S. Dist. LEXIS 88032 (W.D.N.C. 2006) ................................................... 11, 12, 14

Waifersong, Ltd. v. Classic Music Vending,
    976 F.2d 290 (6th Cir. 1992) ............................................................................................... 8

Whitman v. U.S. Lines, Inc.,
    88 F.R.D. 528 (E.D. Tex. 1980) ........................................................................ 9, 11, 12, 13, 14


**Statutes**

17 U.S.C. § 106(1, 3) ...................................................................................................................... 12

28 U.S.C. § 1927 ............................................................................................................................. 15

Fed. R. Civ. P. 11 ............................................................................................................................ 11

Fed. R. Civ. P. 55(c) ............................................................................................................ 1, 7, 8, 15

Fed. R. Civ. P. 60(b)(1) .................................................................................................................... 8


**Treatises**

Schwarzer et al., Rutter Group Practice Guide:
    Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions,
    Ch. 6-E, 6:164 (Thomson Reuters/West 2009) ............................................................. 8

-iv-

W02-WEST:6NB1\401576921.1            DEFENDANT'S MOTION TO SET ASIDE DEFAULT
Civil Action No. 3:09-cv-01391-JSW

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 14, 2009 at 9:00 a.m. in Courtroom 11, 19th Floor of the United States District Court for the Northern District of California, United States Courthouse, San Francisco Division, 450 Golden Gate Ave., San Francisco, CA, 94102, and pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, defendant PETER LANG PUBLISHING, INC. ("Peter Lang") will and hereby does move the Court to set aside the entry of default rendered against Peter Lang on May 14, 2009 and set a new deadline for Peter Lang to respond to Plaintiffs' pleading.  This Motion is made on the grounds that good cause exists to set aside the entry of default, based on Peter Lang's excusable neglect.

This Motion is supported by Peter Lang's Memorandum of Points and Authorities attached below; the Declarations of Christopher S. Myers and W. Hubert Plummer and all exhibits thereto; the [Proposed] Order filed concurrently with this Motion; and any oral argument Peter Lang may present at any hearing on this Motion.

**CONCISE STATEMENT OF RELIEF SOUGHT**

Defendant Peter Lang respectfully requests the Court set aside the entry of default rendered against Peter Lang as Docket No. 11 in this action on May 14, 2009, and set Peter Lang's deadline to respond to Plaintiffs' First Amended Complaint for the date that is ten days following the Court's granting of this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **STATEMENT OF ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT**

This Court entered a default against Defendant Peter Lang on May 14, 2009. (Docket No. 11.)  The main issue to be decided by this Motion is whether good cause exists to set aside that entry of default based on Peter Lang's excusable neglect.

Peter Lang will demonstrate its excusable neglect by showing that 1) it had a reasonable excuse for the default based on its good faith settlement-related communications with Plaintiffs' counsel and its reliance on representations by Plaintiffs' counsel that made Peter Lang

-1-

W02-WEST:6NB1\401576921.1
Civil Action No. 3:09-cv-01391-JSW

DEFENDANT'S MOTION TO SET ASIDE DEFAULT

believe the parties would attempt an informal resolution of their disputes before the formal action proceeded, 2) Peter Lang did not exhibit any culpable conduct, 3) Peter Lang has a very meritorious defense to this action, which it communicated to Plaintiffs' counsel along with an offer of proof and understood Plaintiffs' counsel to be investigating and planning to address prior to the need for a responsive pleading from Peter Lang, 4) Plaintiffs will not be prejudiced by a setting aside of the entry of default, 5) this Motion has been timely and expeditiously filed, and 6) the presumption in favor of decisions on the merits and against defaults should operate in full force in these circumstances.  *See e.g. TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696-701 (9th Cir. 2001); *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355-356 (9th Cir. 1974).

II.     SUCCINCT STATEMENT OF THE RELEVANT FACTS

Defendant Peter Lang Publishing, Inc. is a publisher of written works (primarily academic texts and books), with a U.S. office in New York.  (Declaration of Christopher S. Myers ("Myers Decl."), ¶ 1.)

A.     Plaintiffs' Complaint.

On April 8, 2009 the Summons and Complaint in this action were received at the New York offices of Peter Lang and were forwarded by overnight delivery to Peter Lang's Managing Director, Christopher S. Myers.  (Myers Decl., ¶ 2.)  The thrust of Plaintiffs' Complaint (and subsequently-filed First Amended Complaint) is that Peter Lang has infringed Plaintiffs' copyright in a book entitled, "Virtual Reality and the College Freshman: All Our Friends Are 18" by publishing a version of the book and profiting from sales thereof.  (*See generally* Docket No. 1 [Complaint]; Docket No. 6 [First Amended Complaint].)

B.     Discussion Between Christopher S. Myers of Peter Lang and Plaintiffs' Counsel Regarding the Claims Made in the Complaint.

On the very next day, April 9, 2009, Mr. Myers called Plaintiffs' counsel (D. Alexander Floum) and spoke with him for approximately thirty minutes.  (Myers Decl., ¶ 3.)  Mr. Myers advised Mr. Floum that Peter Lang had received the Complaint and thought the matter could be easily resolved, due to the fact that Peter Lang had never published the book about which Plaintiffs complained.  (*Id.*)  Mr. Myers further stated he was prepared to provide Plaintiffs with

-2-

1  whatever proof they wanted supporting his representation that Peter Lang had never published the
2  book.  (*Id.*)  Mr. Myers and Mr. Floum then discussed the claims in the Complaint in detail.  (*Id.*)
3  Addressing Plaintiffs' allegation that they never signed a contract with Peter Lang,
4  Mr. Myers told Mr. Floum that although Peter Lang no longer has the contract document on file,
5  its database indicates it registered the book with Library of Congress, reviewed sample pages from
6  Plaintiffs and received a subvention deposit of Three Hundred Dollars ($300.00) from them, and
7  cancelled the contract in November of 1998.  (Myers Decl., ¶ 4.)  Mr. Floum also mentioned
8  during that conversation that Plaintiffs had visited Peter Lang's offices in New York.  (*Id.*)  Mr.
9  Myers explained to Mr. Floum that neither that nor any of the other activities Mr. Myers had
10 identified would have taken place in the absence of a signed contract between Plaintiffs and Peter
11 Lang.  (*Id.*)
12 Addressing Plaintiffs' allegation that Peter Lang had published the alleged book
13 based on listings in various book-selling databases, Mr. Myers explained to Mr. Floum that Peter
14 Lang properly registered the book with the Library of Congress and received an International
15 Standard Book Number ("ISBN") from the Library of Congress at the time Peter Lang began to
16 work towards production of the book, but had never actually published or distributed the book.
17 (Myers Decl., ¶ 5.)  Wholesalers and other distribution sources use the Library of Congress
18 records to register new titles in their own databases.  (*Id.*)  However, those databases use varying
19 degrees of efficiency in purging "dead" titles, therefore leaving some titles in their databases that
20 never publish.  (*Id.*)  In the case of all retail sites listed in the Complaint, the Peter Lang title is
21 listed as "not available."  (*Id.*)  Plaintiffs had apparently interpreted this information to mean that
22 Peter Lang had indeed proceeded with publication.  (*Id.*)  Mr. Myers explained all these details to
23 Mr. Floum.  (*Id.*)
24 Mr. Myers also explained to Mr. Floum that the listing of the book as being
25 available at the Chicago Public Library was likely due to similar circumstances, in that the
26 Chicago Public Library had likely picked up erroneous data from some distribution source.
27 (Myers Decl., ¶ 6.)  A subsequent e-mail to the Chicago Public Library confirmed that was indeed
28 the case.  (*Id.* at Exh. A.)

-3-

1   Mr. Myers further explained to Mr. Floum that Peter Lang had planned to publish
2 the subject book, prior to the cancellation of the contract, as a hard-cover library edition. (Myers
3 Decl., ¶ 7.) That publishing profile would have resulted in the great majority of the sales, likely
4 90% or more, coming from university libraries. (*Id.*) However, according to the results of a
5 search Mr. Myers ran of the major international library collection search engine, WorldCat, only
6 two copies of the alleged Peter Lang edition of the book were registered with library collections,
7 those being the Chicago Public Library and the German National Library. (*Id.*) Mr. Myers
8 described these things to Mr. Floum, and explained that, based on the almost complete absence of
9 the purported Peter Lang version of the book in library collections around the world, Peter Lang
10 could not possibly have published the book. (*Id.*)

11   Mr. Myers also explained to Mr. Floum that none of the major book-selling
12 websites, such as Amazon.com and B&N.com, list any used copies of the purported Peter Lang
13 version of the book as being available, and that anyone with any publishing experience would
14 realize that the on-line used book market is enormous and growing every day, such that a person
15 can purchase a used copy of virtually any Peter Lang book from any one of the major sites.
16 (Myers Decl., ¶ 8.) Therefore, the fact that no copies of the purported Peter Lang version of the
17 book complained of by Plaintiffs are available for purchase also proves the impossibility of Peter
18 Lang ever having published the book. (*Id.*)

19   At the end of their conversation, Mr. Floum told Mr. Myers he would speak to his
20 clients concerning Peter Lang's offer to informally prove up Mr. Myers's representations, and
21 stated that he would get back to Mr. Myers after he had done so. (Myers Decl., ¶ 9.) Based on
22 their conversation and Mr. Floum's representations, Mr. Myers did not believe that Plaintiffs
23 expected Peter Lang to respond to the Complaint until Mr. Floum had a chance to speak with
24 Plaintiffs and he and Mr. Myers had an opportunity to confer further to determine whether a
25 negotiated solution could be reached. (*Id.* at ¶¶ 9, 13.)

26   C.   <u>Mr. Myers of Peter Lang Follows Up With Mr. Floum</u>.

27   Mr. Myers did not hear back from Mr. Floum as Mr. Floum had represented he
28 would, and on May 4, 2009, Mr. Myers sent Mr. Floum a follow-up e-mail, confirming their

-4-

1  earlier telephone conversation. (Myers Decl., ¶ 10 and Exh. B.) Mr. Floum never responded to
2  that May 4, 2009 e-mail, so on May 18, 2009, Mr. Myers sent another e-mail to Mr. Floum,
3  attaching a copy of his prior May 4, 2009 e-mail. (Myers Decl., ¶ 11 and Exh. C.)

      D.     <u>Mr. Floum Provides Abrupt Notice of Default After Failing to Respond to Mr. Myers's Inquiries</u>.

      At 9:00 p.m. on May 18, 2009, Mr. Floum sent Mr. Myers an e-mail notifying him that a default had been entered against Peter Lang in this action. (Myers Decl., ¶ 12 and Exh. D.) Mr. Myers immediately called Mr. Floum to ask why Mr. Myers never heard from him and why a default had been entered against Peter Lang while the parties' settlement discussions were pending. (*Id.*) Mr. Floum stated that Peter Lang had failed to follow proper procedures in responding to the Complaint, but did not offer any further explanation or comments with respect to the information Mr. Myers had shared or Peter Lang's settlement proposal. (*Id.*)

      Mr. Myers believed in good faith that a half-hour-long conversation with Mr. Floum, in which all of the details above were explained, had cleared up any misunderstanding about the issue of Peter Lang having purportedly published Plaintiffs' Book, and had certainly at least postponed the need to file anything in response to the Complaint while the parties were (to Mr. Myers' belief and understanding) attempting to work out a negotiated solution. (Myers Decl., ¶¶ 9, 13.) Mr. Floum's positive response to the effect that he understood Mr. Myers' explanation and that he would discuss these details with his clients and get back to Mr. Myers bolstered Mr. Myers's good faith belief that the parties could resolve the matter without any further legal action or filings. (*Id.*) Mr. Myers was therefore surprised to not receive any response to his conversation with Mr. Floum or his subsequent e-mails to Mr. Floum except for a message informing him that a default had been entered against Peter Lang. (*Id.*)

      E.     <u>Peter Lang Refers the Matter to Counsel</u>.

      Following Mr. Myers's May 18, 2009 conversation with Mr. Floum, he referred the matter to Peter Lang's counsel, Plummer & Plummer, LLP, for their further communication with Mr. Floum. (Myers Decl., ¶ 14.) He did so by e-mailing W. Hubert Plummer a copy of the

-5-

1  Summons and Complaint and Notice of Entry of Default at 9:49 p.m. on May 18, 2009.
2  (Declaration of W. Hubert Plummer ("Plummer Decl."), ¶ 2.)

3        F.      <u>Peter Lang's Counsel, Mr. Plummer, Contacts Plaintiffs' Counsel, Mr. Floum</u>.

4        At around the commencement of business California time (PDT) on May 19, 2009,
5  Mr. Plummer telephoned D. Alexander Floum, Plaintiffs' counsel, and introduced himself as
6  counsel for Peter Lang.  (Plummer Decl., ¶ 3.)  Mr. Plummer suggested to Mr. Floum that this was
7  not a matter that justified the expense of litigation by either party, because the assertion in the
8  Complaint that Peter Lang had published Plaintiffs' book was not true.  (*Id.*)  Mr. Plummer also
9  offered to provide Mr. Floum with whatever information was necessary to satisfy Plaintiffs that
10 their allegations were not correct.  (*Id.*)

11       Mr. Plummer further told Mr. Floum that the WorldCat search report attached to
12 the Complaint as part of Exhibit B indicating the version of the book purportedly published by
13 Peter Lang was available in the Chicago Public Library had been investigated, and that Peter Lang
14 had received written confirmation from the Chicago Public Library that the listing in WorldCat
15 was in error and that the Chicago Public Library does not own the "Virtual Reality and the College
16 Freshman" Book.  (Plummer Decl., ¶ 3.)  That conversation was therefore the second time Mr.
17 Floum had been apprised of that fact.  (*See id.*; Myers Decl., ¶ 6 and Exh. A.)

18       Mr. Plummer also advised Mr. Floum that the allegation in Plaintiffs' pleading that
19 Plaintiffs had never entered into a contract with Peter Lang was also in error, and that ten years
20 ago a contract between Peter Lang and Plaintiffs had been entered into pursuant to which Plaintiffs
21 had paid preliminary expenses of Three Hundred Dollars ($300.00) and that, subsequently, the
22 contract had been cancelled without any action on the part of Peter Lang that would have resulted
23 in the publication of the book.  (Plummer Decl., ¶ 3.)  Mr. Plummer offered to provide Mr. Floum
24 with whatever evidence he or his client required to verify those representations.  (*Id.*)  Mr. Floum
25 told Mr. Plummer he would discuss the matter with his clients and get back to Mr. Plummer.  (*Id.*)

26       In that same conversation on May 19, 2009, Mr. Plummer further explained to Mr.
27 Floum that Plaintiffs' execution of a contract with Peter Lang was confirmed by Peter Lang's
28 filing with the Library of Congress for an ISBN for the potential book publication, and that the

-6-

1 distributor websites referred to in the attachments to Plaintiffs' pleading listing Peter Lang as
2 publisher were extracts from the Library of Congress database and did not evince that the book
3 was actually published by Peter Lang. (Plummer Decl., ¶ 4.) Mr. Plummer also explained that
4 these facts were further confirmed by Plaintiffs' filing for an ISBN number for the book as a self-
5 published book after the cancellation of the contract with Peter Lang. (*Id.*)

      G.    <u>Mr. Floum and Plaintiffs Stand Silent Despite Peter Lang's Attempts to Discuss and Negotiate This Matter Toward a Potential Resolution</u>.

Mr. Plummer did not hear further from Mr. Floum before the Memorial Day holiday (May 25, 2009), but received a copy of a notice from Peter Lang that a motion was being made to enter default judgment against Peter Lang. (Plummer Decl., ¶ 4.) Mr. Plummer called Mr. Floum at approximately 12:30 p.m. New York Time (EDT) on May 26, 2009. (*Id.*) Mr. Floum's office advised Mr. Plummer that Mr. Floum was not available, and Mr. Plummer left a message on Mr. Floum's voicemail indicating he was following up on their discussion about settling this matter before the necessity of Peter Lang retaining local counsel in California. (*Id.*) Mr. Plummer did not receive a return call, and at approximately 4:30 p.m. New York time (EDT) on May 26, 2009, he called Mr. Floum again, and was again advised that Mr. Floum was not available. (*Id.*) Mr. Plummer left a further voicemail message asking for Mr. Floum to call him. (*Id.*) Since that date, Mr. Plummer has not had any response from Mr. Floum, and as a result was required to refer the matter to local counsel in California, which he did promptly, leading to the expeditious filing of this Motion today, June 8, 2009. (*See id.*)

III.    <u>ARGUMENT</u>

Because Plaintiffs refused to discuss a potential resolution of this matter after representing they would, or to even return communications from Peter Lang's counsel, all as described above, Peter Lang had no choice but to promptly file this Motion requesting the Court set aside the entry of default rendered against Peter Lang.

      A.    <u>Legal Standards Governing this Motion to Set Aside Entry of Default</u>.

Entry of default maybe set aside for "good cause shown." Fed. R. Civ. P. 55(c). The Court has broad discretion and great procedural flexibility under this "good cause" standard to

grant relief from an entry of default where the facts demonstrate it is the equitable thing to do. *See Brady v. U.S.*, 211 F.3d 499, 504 (9th Cir. 2000); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).

The same general factors evaluated under Fed. R. Civ. P. 60(b)(1) to determine whether relief from a default judgment should be granted (*i.e.*, "mistake, inadvertence, surprise, or excusable neglect") are considered when determining whether "good cause" exists to grant relief from entry of default pursuant to Fed. R. Civ. P. 55(c). *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001); *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004); *Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007); *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). However, the Court's discretion and flexibility in granting relief from a simple entry of default is even greater than in the context of seeking relief from a default judgment. *See Brady v. U.S.*, 211 F.3d 499, 504 (9th Cir. 2000).

B.   <u>Peter Lang's Forbearance In Responding to Plaintiffs' Pleading Was the Result of Excusable Neglect Amounting to Good Cause to Set Aside the Entry of Default</u>.

The default relief grounds of "surprise, inadvertence, or excusable neglect" all essentially boil down to the excusable neglect inquiry. *See Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 393-395 (1993); Fed. R. Civ. P. 55(c), 60(b)(1); Schwarzer et al., Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, Ch. 6-E, 6:164 (Thomson Reuters/West 2009) ("These terms all boil down to excusable neglect: i.e., has the moving party shown a reasonable excuse for the default."). Where relief from entry of default is sought on the grounds of excusable neglect, all relevant circumstances must be taken into account in making an equitable determination as to whether the neglect was "excusable." *See Pioneer Investment Servs.*, 507 U.S. at 395.

Based on all relevant circumstances here, Peter Lang has demonstrated that its neglect in responding to Plaintiffs' pleading was certainly excusable. After receiving Plaintiffs' Complaint on April 8, 2009, the ***very next day*** (April 9, 2009) Peter Lang's Managing Director (Mr. Myers) contacted Plaintiffs' counsel in good faith, explained in detail why the allegations in

-8-

W02-WEST:6NB1\401576921.1   DEFENDANT'S MOTION TO SET ASIDE DEFAULT
Civil Action No. 3:09-cv-01391-JSW

1 Plaintiffs' pleading are incorrect, and offered to provide whatever proof of his representations
2 Plaintiffs' desired and to work toward a negotiated settlement.  (Myers Decl., ¶¶ 2-8.)  Plaintiffs'
3 counsel told Mr. Myers he would speak to his clients concerning the offer to informally prove up
4 Peter Lang's representations regarding the facts, and stated he would get back to Mr. Myers after
5 he had done so.  (*Id.*, ¶ 9.)  Peter Lang's Managing Director (Mr. Myers) believed in good faith
6 that Plaintiffs did not expect Peter Lang to formally respond to Plaintiffs' pleading until Plaintiffs'
7 counsel had a chance to speak with Plaintiffs and the parties had an opportunity to confer further
8 to determine whether a negotiated solution could be reached.  (*Id.*, ¶¶ 9, 13.)  After representing he
9 would discuss the matter with Plaintiffs and get back with his thoughts, and after failing to return
10 subsequent e-mail correspondence from Mr. Myers, Plaintiffs' counsel abruptly informed Peter
11 Lang that, during the time Peter Lang thought Plaintiffs' counsel was conferring with Plaintiffs and
12 considering a possible settlement for purposes of further negotiations, Plaintiff's counsel had
13 instead secured entry of Peter Lang's default.  (*Id.*, ¶¶ 9-13.)
14         Peter Lang's neglect in not filing a response to Plaintiffs' pleading was entirely
15 excusable, because Peter Lang believed it had taken all appropriate steps to avoid the need for
16 formal legal actions and was waiting in good faith on Plaintiffs' counsel to get back to Peter Lang
17 with his thoughts on Mr. Myers's representations and to negotiate a potential settlement.  (Myers
18 Decl. ¶¶ 9, 13); *See Whitman v. U.S. Lines, Inc.*, 88 F.R.D. 528, 530 (E.D. Tex. 1980) (entry of
19 default set aside where defendant had a good faith belief that settlement negotiations were
20 continuing and that the dispute would be resolved without resort to the court); *Knoebber*, 244 F.3d
21 at 697 (even a conscious decision not to respond to a pleading may be "excusable" if supported by
22 credible reasons) (finding excusable neglect and vacating a default judgment); *Owens-Illinois, Inc.
23 v. T & N Ltd.*, 191 F.R.D. 522, 527-528 (E.D. Tex. 2000) (excusable neglect found where isolated
24 human error in defendant's mailroom resulted in the complaint being lost despite procedures in
25 place to handle such documents); *Standard Enterprises, Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 39
26 (S.D.N.Y. 1987) (relief from default granted where summons and complaint had inadvertently
27 been put in a pile of junk mail).  This case is almost identical to the situation in *Whitman* in which
28 relief from default was granted because of a reliance on pending settlement talks, and the facts

-9-

here are even more compelling than those of the *Owens-Illinois* and *Standard Enterprises* cases where relief was granted based on simple inadvertence.

Furthermore, in the context of considering whether to relieve a party of a default judgment on grounds of excusable neglect, the following specific factors are determinative: 1) whether the default resulted from defendant's culpable conduct (*i.e.*, a "devious, deliberate, willful or bad faith failure to respond"); 2) whether defendant has a meritorious defense; and 3) whether reopening the default judgment would prejudice plaintiff. *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007); *Knoebber*, 244 F.3d at 696. Because the courts use the tests for relieving defendants from entry of default and default judgment interchangeably (*see e.g. Knoebber*, 244 F.3d at 696), Peter Lang will address these factors, which fall squarely in Peter Lang's favor and indicate the appropriateness of an order relieving Peter Lang from entry of default in this action.

1. <u>Peter Lang's conduct in not responding to Plaintiffs' pleading was not culpable</u>.

The Myers Declaration filed herewith makes clear that Peter Lang's conduct was not at all culpable. Mr. Myers, Peter Lang's Managing Director, contacted Plaintiffs' counsel the ***very next day*** after receiving the Summons and Complaint, shared a litany of exonerating facts, and secured representations from Plaintiffs' counsel that he would discuss the facts with Plaintiffs and get back to Mr. Myers regarding a potential negotiated resolution. (Myers Decl., ¶¶ 2-9, 13.) Mr. Myers reasonably and in good faith believed that Peter Lang would not be required to take further action until he was contacted by Plaintiffs' counsel for further discussion. (*Id.*, ¶¶ 9, 13.) When he did not hear from Plaintiffs' counsel, Mr. Myers followed up via e-mail and contacted Plaintiffs' counsel to check in, but Plaintiffs' counsel did not respond. (*Id.*, ¶¶ 9-13.) Instead, Plaintiffs' counsel requested entry of default against Peter Lang even after receiving Mr. Myers's follow-up e-mail. (*Id.*) As soon as Mr. Myers learned that Peter Lang had been defaulted, he referred the matter to counsel that very evening, and Peter Lang's counsel has been diligently attempting to communicate with Plaintiffs' counsel and defend the lawsuit since that time. (Myers Decl., ¶¶ 13-14; Plummer Decl., ¶¶ 2-5.)

-10-

1    Therefore, there was certainly nothing devious or bad faith about Peter Lang's
2 neglect in responding to Plaintiffs' pleading, nor was there any willful disregard for the Court.
3 *Whitman*, 88 F.R.D. at 530 (where defendant was relying on settlement discussions with opposing
4 counsel and had a good faith belief the matter could be resolved without further legal action, there
5 was no gross neglect (*i.e.*, culpable conduct) by defendant); *Fabschutz v. Saxby's Coffee, Inc.*,
6 2008 U.S. Dist. LEXIS 27114 at *3, 5-6 (D. Colo. 2008) (defendant's failure to respond to a
7 complaint because he was waiting on advice from his attorney in a similar pending matter so that
8 neither case would be compromised was not culpable, which requires some element of willful
9 disregard for the court); *Villa v. Mediware Information Systems, Inc.*, 2006 U.S. Dist. LEXIS
10 88032 at *4-7 (W.D.N.C. 2006) (a miscommunication between defendant and its counsel due to
11 counsel's receipt of a courtesy copy of the summons and complaint led to counsel's unawareness of
12 the actual service on the client and of the deadline for a response, so the failure to respond was
13 certainly not culpable or anything other than in good faith); *Knoebber*, 244 F.3d at 697, 699 (no
14 culpability when defendant offers a "credible, good faith explanation negating any intention to
15 take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise
16 manipulate the legal process") (no culpable conduct where defendant was severely depressed from
17 having been widowed a year prior, was on medication and in the process of selling her home and
18 moving from California to Florida, and showed no disrespect for the court and worked diligently
19 to remove the default).
20    If there is any culpability in this situation, it is on the part of Plaintiffs and their
21 counsel for requesting an entry of default knowing that Peter Lang was relying on representations
22 the parties would continue to discuss the facts and attempt to negotiate a resolution before the case
23 went forward in a formal way, particularly given the exonerating facts shared by Mr. Myers.  (*See*
24 Myers Decl., ¶¶ 9-13.)  In fact, it appears Plaintiffs must consider the Rule 11 implications of
25 continuing with this action in the face of Peter Lang's declaration evidence and apparently without
26 a single copy of the allegedly offending counterfeit book.

-11-

W02-WEST:6NB1\401576921.1   DEFENDANT'S MOTION TO SET ASIDE DEFAULT
Civil Action No. 3:09-cv-01391-JSW

2.     <u>Peter Lang has a meritorious defense to this action</u>.

Peter Lang's defenses to Plaintiffs' claims are so meritorious in this case that Mr. Myers of Peter Lang was able to explain them at length and in detail to Plaintiffs' counsel the very day after receiving Plaintiffs' Complaint.  (Myers Decl. ¶¶ 2-8, 13.)

For instance, Plaintiffs' assert a claim for copyright infringement.  An essential element of Plaintiffs' claim is that Peter Lang in some way actually published or distributed copies of the alleged book.  *See* 17 U.S.C. § 106(1, 3); Docket No. 6 [First Amended Complaint], ¶ 33.)  As Peter Lang has explained to Plaintiffs and attested to by way of declaration evidence submitted herewith, Peter Lang simply never published or distributed the book.  (Myers Decl., ¶ 5.)  Peter Lang's lack of publication or distribution is attested to with numerous supporting examples and explanations.  (Myers Decl., ¶¶ 2-8, 13.)

Peter Lang therefore has a very meritorious defense, because it simply did not do the fundamental acts complained of by Plaintiffs, which serves as a defense to all of Plaintiffs' claims.  *See Whitman*, 88 F.R.D. at 530 (defendant asserted defenses of contributory negligence and preexisting condition that seemed well-founded in fact and amounted to a meritorious defense); *Fabschutz*, 2008 U.S. Dist. LEXIS 27114 at *6 (cursory review of complaint revealed that defendant could present a meritorious defense that he was relieved of obligations to plaintiff by other defendants); *Villa*, 2006 U.S. Dist. LEXIS 88032 at *8 (good faith belief in availability of meritorious defense sufficient to fulfill excusable neglect standard); *Knoebber*, 244 F.3d at 700-701 (meritorious defense found where a theory was advanced that would not "be a wholly empty exercise").

3.     <u>Plaintiffs will not suffer prejudice if the entry of default is set aside</u>.

There is no prejudice to the plaintiff where the setting aside of the default has done no harm to plaintiff except to require it to prove its case." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000); *Knoebber*, 244 F.3d at 701 (prejudice requires "greater harm than simply delaying resolution of the case," and must hinder plaintiff's ability to pursue a claim, because "merely being forced to litigate on the merits cannot be considered prejudicial") (holding there was no prejudice where defendant sought relief from default judgment within a month of its entry and where no

-12-

1  harm shown from the short delay of the case, and there was no cognizable prejudice in actually
2  requiring plaintiff to litigate the merits of the case or in the costs plaintiff incurred litigating the
3  default).

4  Similarly, Plaintiffs will not be prejudiced if default is set aside here, other than in
5  having to prove up the merits of their case.  After receiving the Complaint on April 8, 2009, Peter
6  Lang immediately and diligently attempted to negotiate a resolution of the matter and was blind-
7  sided by an entry of default it was provided with by Plaintiffs on May 18.  (Myers Decl., ¶¶ 2-13.)
8  Peter Lang then immediately referred the case to counsel, who also diligently contacted Plaintiffs'
9  counsel, engaged in negotiations, and secured representations they would discuss the matters
10 further and attempt to work toward a negotiated resolution, but then had his subsequent
11 communications ignored by Plaintiffs' counsel, most recently on May 26, 2009.  (Myers Decl., ¶
12 14; Plummer Decl., ¶¶ 2-5.)  Peter Lang was then forced to refer the matter to local counsel.
13 (Plummer Decl., ¶ 5.)

14 Peter Lang has now filed this motion as promptly as reasonably possible
15 considering all the circumstances on June 8, 2009, thus avoiding any delay to Plaintiffs, and filing
16 within a month of the entry of default, thus fulfilling the same reasonable timeframe affirmed in
17 the *Knoebber* case as having avoided any prejudice.  *Knoebber*, 244 F.3d at 701; Docket No. 11
18 [Entry of Default dated May 14, 2009]; Myers Decl., ¶ 13 (attesting that Peter Lang did not know
19 of the entry of default until May 18).

20 There has not been any significant expenditure of time or resources by Plaintiffs,
21 nor any loss of evidence or of any ability to pursue their claims on the merits, and therefore,
22 Plaintiffs have not been prejudiced in any manner that would suggest the entry of default should
23 stand.  *See Knoebber*, 244 F.3d at 701; *Whitman*, 88 F.R.D. at 530 (no prejudice shown where
24 defendant responded to entry of default with a motion to set aside the default only five days later);
25 *Fabschutz*, 2008 U.S. Dist. LEXIS 27114 at *6 ("Plaintiffs have not identified any potential
26 prejudice related to Larson's failure to respond a mere fifteen days out of time, and I also find that
27 Plaintiffs will not be prejudiced in any significant way if the default is set aside.  The length of
28 delay is certainly not appreciable under the circumstances of this case.  It is not a case where the

-13-

1  failure to respond 'halted the adversary process' or resulted in 'interminable delay and continued
2  uncertainty.'"); *Villa*, 2006 U.S. Dist. LEXIS 88032 at *7 (delay was minimal and response to
3  default in filing for relief was prompt, and "[T]he only prejudice this court could imagine is
4  prejudice to plaintiff if the default were allowed to stand inasmuch as the court is very sure that
5  such would be reversed by the Court of Appeals for the Fourth Circuit, causing plaintiff real delay
6  and cost.").

       C.       <u>The Law Favors Decisions On the Merits</u>.

       As an over-arching principle, the federal courts have a strong prejudice in favor of trials and decisions on the merits with full participation by all parties. *See Klapport v. U.S.*, 335 U.S. 601 (1949); *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355-356 (9th Cir. 1974) ("[D]efault judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits," and " [w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits").  Again, "[a]s a general rule, all doubts are resolved in favor of the party seeking relief from an entry of default."  *Whitman*, 88 F.R.D. at 530 (citations omitted); *In re Hammer*, 940 F.2d 524, 525 (9th Cir. 1991) (doubts should be resolved in favor of granting a motion setting aside default judgment); *Rasmussen v. W.E. Hutton & Co.,* 68 F.R.D. 231, 233 (N.D. Ga. 1975) (defaults are not generally favored and doubts should be resolved in favor of permitting a hearing on the merits).

       Due to the strong prejudice in favor of decisions on the merits and the policy of resolving any doubts against default and in favor of hearings on the merits, this action is one in which default should be set aside.  There is ample evidence supporting Peter Lang's claim of excusable neglect (Myers Decl., ¶¶ 2-14; Plummer Decl., ¶¶ 2-5), and Peter Lang is entitled to the benefit of the doubt and the opportunity to present the merits of its defenses rather than be snookered by the misleading representations and stealth default filing by opposing counsel.

       For these reasons and al those set forth above, Peter Lang reserves its right to bring a motion seeking sanctions from Plaintiffs' counsel for unreasonably "multiplying the proceedings" in this case by entering Peter Lang's default unnecessarily, and otherwise invites the

-14-

1  Court to levy sanctions against Plaintiffs' counsel *sua sponte* if it deems appropriate.  *See* 28
2  U.S.C. § 1927.
3  IV.     CONCLUSION
4              Defendant Peter Lang Publishing, Inc. has demonstrated good cause under Federal
5  Rule of Civil Procedure 55(c) for setting aside the entry of default rendered against it, based on
6  Peter Lang's excusable neglect caused by the representations of Plaintiffs' counsel, all as described
7  above.  Defendant Peter Lang respectfully requests the Court set aside the entry of default
8  rendered against Peter Lang as Docket No. 11 in this action on May 14, 2009, and set Peter Lang's
9  deadline to respond to Plaintiffs' First Amended Complaint for the date that is ten days following
10 the Court's granting of this Motion.
11 Dated:  June 8, 2009

                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                           By     */s/ P. Craig Cardon*
                                  P. CRAIG CARDON
                                  NATHANIEL BRUNO

                                  Attorneys for Defendant
                                  PETER LANG PUBLISHING, INC.