1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporations
   P. CRAIG CARDON, Cal. Bar No. 168646
3  NATHANIEL P. BRUNO, Cal. Bar No. 228118
   Four Embarcadero Center, 17th Floor
4  San Francisco, California  94111-4109
   Telephone:     415-434-9100
5  Facsimile:     415-434-3947
   E-Mail:        ccardon@sheppardmullin.com
6                 nbruno@sheppardmullin.com

7  Attorneys for Defendant
   PETER LANG PUBLISHING, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13

14  ROBERT and SUZANNE HARVEY, husband     Civil Action No. 3:09-cv-01391-JSW
    and wife; THE ROBERT J. AND SUZANNE
15  R. HARVEY FAMILY TRUST OF 1997, a
    California trust;                       **DEFENDANT'S REPLY MEMORANDUM
16                                          IN SUPPORT OF ITS MOTION TO SET
                    Plaintiffs,            ASIDE ENTRY OF DEFAULT**
17
            v.                             **[Fed. R. Civ. P. 55(c)]**
18
    PETER LANG PUBLISHING INC., a New
19  York corporation; and DOES 1 through 100,   Hearing Date:  August 14, 2009
    inclusive,                             Hearing Time:  9:00 a.m.
20
                    Defendants.            Courtroom:  11, 19th Floor
21                                          Honorable Jeffrey S. White

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

Page

I.    THE DEFAULT ENTERED AGAINST DEFENDANT PETER LANG WAS THE RESULT OF PETER LANG'S EXCUSABLE NEGLECT ................................................. 1

    A.    Peter Lang's Actions Were Not Culpable Because It Relied Upon Un-Refuted Representations by Plaintiffs' Counsel in Forbearing from Escalating the Litigation ............................................................................ 1

        1.    It is un-refuted that Plaintiffs' counsel promised to confer with Plaintiffs regarding Peter Lang's exonerating information, then failed to do so. ..................................................................... 2

        2.    The service of a First Amended Complaint does not contradict Peter Lang's good faith in expecting a direct response from Plaintiffs' counsel to the exonerating facts shared by Mr. Myers. ................................. 2

        3.    The case law cited by Plaintiffs is inapposite and does not rebut the fact that Peter Lang acted without any culpability. ...................................... 4

    B.    PETER LANG HAS MERITORIOUS DEFENSES TO ALL OF PLAINTIFFS' CLAIMS ......................................................................... 6

        1.    Lack of publishing is a meritorious defense to all of Plaintiffs' claims. ..................................................................... 6

        2.    Peter Lang did send a notice to the Library of Congress rescinding the ISBN registration of the Harveys' book. ................................. 7

        3.    Plaintiffs' claims are outside of any conceivable statute of limitations for Plaintiffs' False Designation of Origin species of claims. ...................... 9

    C.    Plaintiffs Will Not Be Prejudiced By Having to Prove the Merits of Their Claims .......................................................................... 9

II.    CONCLUSION .......................................................................... 10

W02-WEST:6NB1\401644317.1
Civil Action No. 3:09-cv-01391-JSW

DEFENDANT'S REPLY MEMORANDUM REGARDING ITS MOTION TO SET ASIDE ENTRY OF DEFAULT

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>Federal Cases</u>

Brand v. NCC Corp.,
4        540 F. Supp. 562 (E.D. Pa. 1982) ........................................................ 5

5
Employee Painters' Trust v. Ethan Enterprises, Inc.,
6        480 F.3d 993 (9th Cir. 2007) ............................................................... 1

7
Fabschutz v. Saxby's Coffee, Inc.,
         2008 U.S. Dist. LEXIS 27114 (D. Colo. 2008) ................................... 7
8

9
Fed. Sav. & Loan Ins. Corp. v. Kroenke,
         858 F.2d 1067 (5th Cir. 1988) ............................................................. 5

10
International Painters and Allied Trades Union and Industry Pension Fund v. HW Ellis
11        Painting Co., Inc.,
          288 F. Supp. 2d 22 (Dist. D.C. 2003) .............................................. 4, 5
12

13
Klapport v. U.S.,
         335 U.S. 601 (1949) .......................................................................... 10

14
Lacy v. Sitel Corp.,
15        227 F.3d 290 (5th Cir. 2000) ............................................................... 9

16
Schwab v. Bullock's Inc.,
         508 F.2d 353 (9th Cir. 1974) ............................................................ 10
17

18
Simon v. Pay Tel Mgmt., Inc.,
         782 F. Supp. 1219 (N.D. Ill. 1991) ..................................................... 5

19
TCI Group Life Ins. Plan v. Knoebber,
20        244 F.3d 691 (9th Cir. 2001) ....................................................... 1, 7, 9

21
United States v. Topeka Livestock Auction, Inc.,
         392 F. Supp. 944 (N.D. Ind. 1975) ..................................................... 6
22

23
Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.,
         925 F.2d 226 (7th Cir. 1991) ............................................................... 5

24

<u>Statutes</u>
25

26
Fed. R. Civ. P. 55(c) ...................................................................................... 1

27

28

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

**REPLY MEMORANDUM**

Plaintiffs' Opposition to Defendant Peter Lang Publishing, Inc.'s ("Peter Lang's") Motion to Set Aside Entry of Default does not refute Defendant's assertion that good cause exists under Federal Rule of Civil Procedure 55(c) for setting aside the entry of default against Defendant.  The Opposition is based on incompetent and inadmissible "evidence" that is wholly speculative, hearsay, and lacks foundation.[1]  Further, it does not refute the elements established by Defendant under relevant Ninth Circuit law demonstrating this is a quintessential case of excusable neglect in which Peter Lang is entitled to have the entry of default against it set aside.

Peter Lang therefore respectfully reiterates its request that Plaintiffs' entry of default against Peter Lang that was obtained by ambush be set aside.

I.      THE DEFAULT ENTERED AGAINST DEFENDANT PETER LANG WAS THE RESULT OF PETER LANG'S EXCUSABLE NEGLECT

Peter Lang reiterates that the standard for demonstrating excusable neglect depends on an evaluation of the following factors:  1) whether the default resulted from defendant's culpable conduct (*i.e.*, a "devious, deliberate, willful or bad faith failure to respond"); 2) whether defendant has a meritorious defense; and 3) whether reopening the default judgment would prejudice plaintiff.  *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).

A.      Peter Lang's Actions Were Not Culpable Because It Relied Upon Un-Refuted Representations by Plaintiffs' Counsel in Forbearing from Escalating the Litigation.

Peter Lang established in its moving papers that it did not act culpably with respect to its missing the opportunity to respond to Plaintiffs' pleading.  The facts show it acted immediately to contact Plaintiff's counsel once receiving the Complaint, relied in good faith on explicit representations of Plaintiffs' counsel in forbearing from escalating the litigation, and tried to follow up with Plaintiffs' counsel to resolve the situation, all before being abruptly and

---

[1] Defendant Peter Lang incorporates by reference into this Reply its Objections to Plaintiffs' Declaration Evidence filed concurrently herewith.

W02-WEST:6NB1\401644317.1
Civil Action No. 3:09-cv-01391-JSW

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

stealthily defaulted by Plaintiffs' counsel in contravention of the prior representations of Plaintiffs' counsel.  (Myers Declaration [Docket No. 15], ¶¶ 2-9, 13.)

       1.    <u>It is un-refuted that Plaintiffs' counsel promised to confer with Plaintiffs regarding Peter Lang's exonerating information, then failed to do so.</u>

In response, Plaintiffs' counsel (D. Alexander Floum) submitted a self-serving declaration (Docket No. 22-1) purporting only that he never indicated Plaintiffs would delay defaulting Peter Lang and that he never stated the parties were in settlement talks.

But the omissions of Mr. Floum's declaration speak louder than its assertions.  Mr. Floum's declaration notably fails to refute the key fact established by the moving Declaration of Christopher Myers – that after hearing Mr. Myers' detailed explanation of Peter Lang's innocence and the numerous exonerating facts raised by Mr. Myers, Mr. Floum specifically told Mr. Myers of Peter Lang that he would speak to Plaintiffs and get back to Mr. Myers.  (Myers Declaration [Docket No. 15], ¶¶ 9, 13.)  It was Mr. Myers' reliance on the explicit representation of Mr. Floum that clearly made reasonable Mr. Myers' belief that the parties were engaging in settlement negotiations and that Peter Lang did not need to formally respond further to the litigation until Mr. Myers heard back directly from Mr. Floum as promised.  (*Id.*)

Because it is that key point which forms the foundation for Peter Lang's assertion of good faith and reasonableness amounting to excusable neglect, Plaintiffs have failed to rebut (or even appropriately address) Peter Lang's establishment of the fact it did not act culpably.

       2.    <u>The service of a First Amended Complaint does not contradict Peter Lang's good faith in expecting a direct response from Plaintiffs' counsel to the exonerating facts shared by Mr. Myers.</u>

Plaintiffs also try to emphasize that Peter Lang was served with a First Amended Complaint on April 22, 2009, thirteen days after the initial conversation between Mr. Myers of Peter Lang and Plaintiffs' counsel Mr. Floum on April 9, 2009 (which Mr. Floum wrongly refers to as "several weeks" later).  (Floum Decl. [Docket No. 22-1], ¶ 10.)  But Plaintiffs' service of the First Amended Complaint does not come close to establishing any culpability by Peter Lang.

-2-

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

It remains un-refuted that Mr. Floum told Mr. Myers in a voice-to-voice conversation that he would confer with Plaintiffs and get back to Mr. Myers regarding a potential negotiated resolution.  (Myers Declaration [Docket No. 15], ¶¶ 2-9, 13.)  It was therefore entirely reasonable for Mr. Myers to have been waiting on a direct personal communication from Mr. Floum following up on the bevy of exonerating facts Mr. Myers had shared in their initial conversation.  There is nothing other than rank speculation to suggest Mr. Myers (a non-lawyer) could or should have interpreted the receipt by his office of a First Amended Complaint as some sort of implicit message from Plaintiffs' counsel that Plaintiffs' counsel was reneging on his promise to confer with Plaintiffs and follow up directly with Mr. Myers, or that the service of a First Amended Complaint was instead an indication from Plaintiffs' counsel that Plaintiffs were pressing forward with the litigation without addressing as promised all of the pertinent facts Mr. Myers had willingly shared in good faith.

Moreover, Plaintiffs ignore the fact that, on May 4, 2009, _after_ the date the First Amended Complaint was served on April 22, 2009 but _before_ Plaintiffs entered Peter Lang's default on May 14, 2009 (Docket No. 11), Mr. Myers sent Mr. Floum a direct e-mail to follow up on their initial conversation and request a response.  (Myers Decl. [Docket No. 15], ¶ 10 and Exh. B.)  Mr. Myers' e-mail to Mr. Floum is clearly an indication that Mr. Myers was still relying in good faith on Mr. Floum's direct representations and did not perceive that his original belief the parties were working towards a negotiated resolution had been altered by the service of a First Amended Complaint or by any other circumstance.  It is certainly clear evidence that Peter Lang was not acting culpably (with any devious or bad faith intentions), because Mr. Myers was obviously still earnestly trying to follow up on his prior negotiations with Mr. Floum and resolve the action.  (_See id._)

Notably, Mr. Floum refused to respond to Mr. Myers' May 4, 2009 e-mail.  Instead, he chose to ambush Peter Lang by entering its default on May 14, 2009, and only informed Peter Lang about the default following another e-mail inquiry from Mr. Myers on May 18, 2009.  (Myers Decl. [Docket No. 15], ¶¶ 10-12 and Exhs. C-D.)  A reasonable attorney acting in good

-3-

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

1  faith should have realized from Mr. Myers' May 4, 2009 e-mail that Mr. Myers was still operating

2  under the belief the parties were in settlement talks working towards a negotiated resolution,

3  and/or should have at least responded to Mr. Myers' e-mail with a simple message that Plaintiffs

4  had chosen to serve a First Amended Complaint to which Peter Lang was required to respond and

5  that Plaintiffs were not interested in a negotiated settlement.  Instead, Mr. Floum purposely

6  ignored Mr. Myers' e-mail knowing that Mr. Myers was likely mistaken as to Peter Lang's

7  obligation to respond to Plaintiffs' pleading, and capitalized unfairly upon Mr. Myers' good faith.

8          It is Plaintiffs' counsel who acted culpably and in bad faith, not Peter Lang, which

9  is the reason Peter Lang has requested the Court consider sanctioning Plaintiffs' counsel, and has

10 reserved its right to file a motion for sanctions.[2]

11          3.      <u>The case law cited by Plaintiffs is inapposite and does not rebut the fact that

12                  Peter Lang acted without any culpability.</u>

13          None of the case law cited by Plaintiffs for the proposition that ongoing settlement

14 discussions do not give rise to an excusable neglect claim is analogous to the facts of this case.

15          The main case on which Plaintiffs rely, *International Painters and Allied Trades

16 Union and Industry Pension Fund v. HW Ellis Painting Co., Inc.*, 288 F. Supp. 2d 22 (Dist. D.C.

17 2003), is inapposite.  In that case, the court refused to overturn a default <u>judgment</u> (not merely an

18 entry of default, as in this case) where the defendant cited ongoing settlement discussions as the

19 reason for its failure to respond to the complaint.  288 F. Supp. 2d at 26-28.  Importantly, in

20 *International Painters*, the plaintiff's counsel had made it explicitly clear to the defendant that no

21 further continuances would be granted, had warned of the possibility of a default, and had

22 specifically threatened to file for a default after a certain date, and the defendant was further on

23 notice pursuant to a court order that the plaintiff was obligated to apply for a default.  *Id.*

24 _____

25 [2] As noted in Peter Lang's Moving Memorandum (Docket No. 14) and the accompanying
   Plummer Declaration (Docket No. 16), Plaintiffs' counsel Mr. Floum repeated his

26 duplicitous behavior after the default had been entered by promising to get back Peter
   Lang's counsel (Mr. W. Hubert Plummer) after Mr. Plummer also explained the

27 exonerating facts to Mr. Floum, but Mr. Floum again failed to do so.

28

DEFENDANT'S REPLY MEMORANDUM
                                    REGARDING ITS MOTION TO SET ASIDE ENTRY
                                    OF DEFAULT

1    Therefore, the defendant's reliance on settlement negotiations was not reasonable on those facts.

2    *Id.*  But in this case, quite opposite from warning Peter Lang that Plaintiffs would seek default,

3    Plaintiffs' counsel Mr. Floum instead assured Mr. Myers of Peter Lang that he (Mr. Floum) would

4    consult with his clients and get back to Mr. Myers.  (Myers Decl. [Docket No. 15], ¶¶ 9, 13.)  If

5    anything, *International Painters* therefore confirms Peter Lang's <u>lack</u> of culpability in this case.

6               None of the other cases cited in a footnote by Plaintiffs (which were apparently

7    simply copied from cites in the *International Painters* case) suggest that Peter Lang's actions were

8    culpable under these facts.  Plaintiffs cite *Simon v. Pay Tel Mgmt., Inc.*, 782 F. Supp. 1219, 1226

9    (N.D. Ill. 1991) for the proposition that the existence of settlement negotiations, without more,

10   does not excuse the parties from complying with court orders.  But in *Simon*, the court refused to

11   relieve the defendant from entry of a default <u>judgment</u> because it had failed to file an answer even

12   after "numerous orders of this Court and of [the judge] requiring defendants to submit an answer

13   to plaintiff's complaint and to appear at status hearings and pretrial conferences" under the specific

14   threat of default, suggesting that the failure to respond had been in deliberate defiance of the court.

15   782 F. Supp. at 1225-1226.  As explained above, the situation here is much different, with Peter

16   Lang having been engaging in settlement discussions in good faith and having relied on the

17   representations of Plaintiffs' counsel, and not with any indication of deliberate defiance of the

18   Court or its procedures.  (Myers Decl. [Docket No. 15], ¶¶ 2-13.)

19               Similarly, *Brand v. NCC Corp.*, 540 F. Supp. 562, 564 (E.D. Pa. 1982) involved a

20   situation in which the defendant made a deliberate decision to refuse to respond to the complaint,

21   thereafter directly refused to follow court orders, and engaged counsel not to litigate the action but

22   to negotiate, and was therefore not relieved from a default <u>judgment</u>.  Further, the defendant in

23   *Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 229 (7th Cir. 1991)

24   unreasonably relied on assurances by a third party that the third party would take action to

25   substitute itself into the case as the proper defendant and did not do anything itself to respond the

26   complaint pending against it, which the court considered an abdication of the named defendant's

27   responsibility to the court.  Finally, in *Fed. Sav. & Loan Ins. Corp. v. Kroenk*e, 858 F.2d 1067,

28

-5-

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

1   1070-1071 (5th Cir. 1988), the defendant had directly ignored an order of the court to file an

2   answer within ten days, and in *United States v. Topeka Livestock Auction, Inc.*, 392 F. Supp. 944,

3   951 (N.D. Ind. 1975), the court indicated that if the defaulted third-party defendant had submitted

4   competent evidence of ongoing settlement negotiations (as Peter Lang has done here) instead of

5   citing to materials it forgot to attach in the record, that evidence would potentially have made a

6   set-aside appropriate, and instead based the decision to uphold the default judgment based on the

7   lack of a meritorious defense.  All of these cases are therefore highly distinguishable on their facts

8   because they involved affirmative culpable conduct by the defaulted parties.

9           Accordingly, Plaintiffs have not cited to any law supporting the suggestion that

10  Peter Lang acted culpably under the facts of this case.  And Peter Lang's Moving Memorandum

11  (Docket No. 14, pp. 10-12) cites to numerous analogous cases demonstrating Peter Lang did not

12  act culpably.  Peter Lang has demonstrated it did not act culpably and that it acted in the utmost

13  good faith, by its swiftness in contacting Plaintiffs' counsel, its reliance on Plaintiffs' counsel's

14  representations, its diligence in following up with Plaintiffs' counsel, and its swiftness in seeking

15  to remedy the default after it was discovered.  (Myers Decl. [Docket No. 15], ¶¶2-13; Plummer

16  Declaration [Docket No. 16], ¶¶2-5.)

17      B.    PETER LANG HAS MERITORIOUS DEFENSES TO ALL OF PLAINTIFFS'

18            CLAIMS

19          1.    Lack of publishing is a meritorious defense to all of Plaintiffs' claims.

20          Plaintiffs' argument that Peter Lang did not assert it has any defense to the majority

21  of Plaintiffs' claims is wrong.  Peter Lang used Plaintiffs' first claim for copyright infringement as

22  an example of a claim to which Peter Lang has a clear defense based on lack of publishing, then

23  stated that the fact Peter Lang has never published the book that forms the basis of Plaintiffs'

24  action "*serves as a defense to all of Plaintiffs' claims*."  (Peter Lang's Motion Memorandum

25  [Docket No. 14], p. 12 (emphasis added).)

26          The thrust of Mr. Myers' entire discussion with Plaintiffs' counsel (and Peter Lang's

27  counsel's subsequent discussion with Peter Lang's counsel) was to explain there is no basis for any

28
                                                    -6-

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

1   of Plaintiffs' claims because Peter Lang has simply never published the book about which

2   Plaintiffs' complain, which is the predicate purported offense on which all of Plaintiffs' claims are

3   based.  (Myers Decl. [Docket No. 15], ¶¶2-13; Plummer Declaration [Docket No. 16], ¶¶2-5.)  If

4   Peter Lang did not publish the book, which it did not, there is no basis for <u>any</u> claims by Plaintiffs.

5   And Peter Lang has explained at length that it never published the book, which is un-refuted by

6   Plaintiffs, other than the bizarre, speculative, and inadmissible "beliefs" of Robert Harvey based

7   wholly conjecture and no specific facts.  (*See* Harvey Declaration [Docket No. 22-2], ¶¶ 6-13.)

8   Therefore, all of Plaintiffs' claims will fail, because Peter Lang never published the Harveys' book.

9           In any event, all Peter Lang needs to show is that it could conceivably present a

10  meritorious defense, and that allowing it to do so would not be a wholly empty exercise.

11  *Knoebber*, 244 F.3d at 700-701; *Fabschutz v. Saxby's Coffee, Inc.*, 2008 U.S. Dist. LEXIS 27114

12  at *3, 5-6 (D. Colo. 2008).  Peter Lang has certainly done that on the basis of the explicit

13  declaration evidence submitted by Mr. Myers and by its argument on this Motion.

14              2.      <u>Peter Lang did send a notice to the Library of Congress rescinding the ISBN</u>

15                      <u>registration of the Harveys' book</u>.

16          Plaintiffs also advance for the first time in the Declaration of Robert Harvey that

17  Peter Lang is somehow responsible for unsubstantiated lost sales by Plaintiffs for failing to

18  properly give notice to the world that the book had not published by Peter Lang, and that Peter

19  Lang should somehow be taking action to rescind the incorrect listings on the websites of various

20  booksellers.  (Harvey Declaration [Docket No. 22-2], ¶¶ 8-14.)

21          But as Peter Lang explained in the Declaration of Christopher Myers [Docket No.

22  15], Peter Lang validly applied for an ISBN number for the book as a service to the Harveys when

23  it was under contract with the Harveys, and has no control over how Internet-based booksellers,

24  wholesalers, and distributors make, revise, or purge their listings for books that were at one time

25  slated to be published with certain ISBN numbers.  (*See* Myers Declaration [Docket No. 15], ¶¶ 4-

26  8.)  Accordingly, Peter Lang cannot possibly be the cause of the speculative harm Plaintiffs now

27

28

-7-

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

1    appear to be alleging (which was the result of legitimate contract-based actions between the

2    parties), and have no means to prevent it anyway.

3              Furthermore, Peter Lang has further investigated to make sure it has already done

4    all it can to prevent the listing of the book title which it never published.  Peter Lang properly

5    registered the Harveys' book with the Library of Congress ("LOC") pursuant to its prior contract

6    with Robert and Suzanne Harvey, and received an International Standard Book Number ("ISBN")

7    from the LOC at the time that it began to work towards production of the book, but had never

8    actually published or distributed the book because the Harveys cancelled the contract with Peter

9    Lang.  (Supplemental Declaration of Christopher S. Myers, ¶ 2.)  The LOC has now verified that

10   Peter Lang rescinded the ISBN at the time the contract was cancelled in 1998.  (*Id.*)  So, in fact,

11   Peter Lang <u>did</u> send out an "unwind notice" to the LOC, the only entity with which it had direct

12   contact or control with respect to rescinding the ISBN, thereby giving notice to the world that the

13   book was not going to be published by Peter Lang.  (*Id.*)

14             Nevertheless, the initial ISBN record appeared in the LOC database, and all

15   wholesalers (such as Amazon.com) access that database to populate their sites with new title data.

16   (Supplemental Declaration of Christopher S. Myers, ¶ 3.)  Peter Lang does not send any initial

17   notifications to online vendors, it merely registers an ISBN record with the LOC.  (*Id.*)  So, Peter

18   Lang did all it could be expected to do as a publisher by rescinding the ISBN with the LOC to

19   indicate the book would not be published by Peter Lang.  (*Id.*)  It is the distribution sources'

20   responsibility to maintain the accuracy of their databases based on the information available from

21   the LOC, which again, Peter Lang accurately updated by rescinding the ISBN at the time the

22   Harveys cancelled their contract with Peter Lang in 1998.  (*Id.*)  Peter Lang has therefore done all

23   it can reasonably be expected to do to prevent any inaccurate listings of the book title as having

24   been published by Peter Lang.

25             This additional evidence provided by Peter Lang as a response to the new

26   arguments made by Plaintiffs about the intended thrust of their own claims further presents a

27   defense to all of the claims asserted in Plaintiffs' First Amended Complaint, and at least provides

28

-8-

DEFENDANT'S REPLY MEMORANDUM
REGARDING ITS MOTION TO SET ASIDE ENTRY
OF DEFAULT

1    the colorable possibility of a meritorious defense to all claims that Peter Lang should be allowed

2    to present.

3                   3.      Plaintiffs' claims are outside of any conceivable statute of limitations for

4                           Plaintiffs' False Designation of Origin species of claims.

5            Peter Lang has already established that its registration of the ISBN number for

6    Plaintiffs' book was done pursuant to a contract with Plaintiffs, fully legitimizing any notice of the

7    ISBN that was ever provided by the LOC or any other person.  And because the registration of the

8    ISBN number in approximately 1998 is the only potential predicate act of publicity done by Peter

9    Lang (notwithstanding that it was later retracted), that single action more than a decade ago falls

10   outside any conceivable statute of limitations on any False Designation of Origin species of claims

11   or related theories of their purported claims Plaintiffs are now arguing.

12           The merits of Peter Lang's defenses to all of Plaintiffs' claims abound.

13           C.      Plaintiffs Will Not Be Prejudiced By Having to Prove the Merits of Their Claims.

14           Peter Lang presented unambiguous case law holding there is no prejudice to the

15   plaintiff where the setting aside of the default has done no harm to plaintiff except to require it to

16   prove its case.  *Knoebber*, 244 F.3d at 701; *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000).

17   That case law was not responded to or contradicted in any way by Plaintiffs.

18           Instead, Plaintiffs attempt to offer evidence of their ill health and of the purportedly

19   struggling publishing industry as reasons they would be prejudiced if the entry of default is set

20   aside.

21           Taken even in their best light, Plaintiffs' arguments regarding prejudice amount to

22   nothing more than a convoluted way of saying they do not want to be forced to prove the merits of

23   their case because it may take longer than they prefer.  That argument is precisely the type of

24   argument that does not amount to prejudice under all the case law cited by Peter Lang (*see*

25   Moving Memorandum at pp. 12-13), and there has not been any assertion of any interminable

26   delay or spoliation in the short time Peter Lang has been defaulted in this action.  Plaintiffs'

27   attempt to manufacture prejudice fails, especially because the law favors decisions on the merits.

28

-9-

1   *See Klapport v. U.S.*, 335 U.S. 601 (1949); *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355-356 (9th

2   Cir. 1974).

3   II.      CONCLUSION

4           Plaintiffs fail to rebut Peter Lang's demonstration of good cause under Federal Rule

5   of Civil Procedure 55(c) for setting aside the entry of default against Peter Lang.  Peter Lang

6   respectfully requests the Court set aside the entry of default rendered against Peter Lang as Docket

7   No. 11 in this action on May 14, 2009, and set Peter Lang's deadline to respond to Plaintiffs' First

8   Amended Complaint for the date that is ten days following the Court's granting of this Motion.

9   Dated:  July 7, 2009

10                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

11

12                  By      */s/ Nathaniel Bruno*
                            P. CRAIG CARDON
13                          NATHANIEL BRUNO

14                          Attorneys for Defendant
                            PETER LANG PUBLISHING, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-10-